# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8379 | **DATE** | 4/4/2003 |
| **CASE TITLE** | Spencer vs. Corn Products | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | APR 0 7 2003 date docketed | |
| | Notified counsel by telephone. | | 30 |
| | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | 4/4/2003 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| TH✓ | courtroom deputy's initials | TH mailing deputy initials | |

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAXON SPENCER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CORN PRODUCTS INTERNATIONAL, )<br>INC., )<br>)<br>Defendant. ) | Civil Action No. 01 C 8379<br><br>**DOCKETED**<br>APR 7 2003 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

Saxon Spencer claims that Corn Products fired him on the basis of his race and retaliated against him because of his activity as a union steward. Corn Products International, Inc. ("Corn Products") moves for summary judgment. As detailed below, the undisputed facts show that Corn Products is entitled to judgment as a matter of law. Accordingly, its motion for summary judgment is granted.

## UNDISPUTED FACTS[1]

### I. Parties

Plaintiff Saxon Spencer is an African-American male. (R. 10-3, Def.'s Statement of Material Facts ¶ 3.) Corn Products is a corporation doing business in Illinois that mainly manufactures various forms of fructose for human consumption. (*Id.* ¶¶ 5-6.)

---

[1] In conjunction with this opinion, the Court has issued a separate order that, where appropriate under the Local Rules, deems certain statements of undisputed fact admitted and strikes others.

30

## II. Specifications and Certifications

While Spencer worked for Corn Products, some of its processing units were certified for quality and safety standards by the International Standards Organization ("ISO"). (R. 10-3, Def.'s Statement of Material Facts ¶ 7.) Because certain customers mandated that its units were ISO certified, a loss of certification would directly result in a loss of business. (*Id.*) Inspectors periodically performed audits of these units to ensure that Corn Products was meeting ISO standards. (*Id.*) Included in some of these audits was a review of the unit's adherence to record-keeping requirements. (*Id.*)

Along with mandating certification, Corn Products' customers also had very strict specifications for its manufacture of fructose. (*Id.* ¶ 6.) In order to meet those specifications, each employee has to fulfill his or her responsibilities without error. (*Id.*)

## III. Spencer's Employment

### A. Orientation

Corn Products hired Spencer as a mechanical operator for its refinery in June of 1990. (R. 10-3, Def.'s Statement of Material Facts ¶¶ 4, 9.) When Spencer began work at Corn Products, the company's human resources personnel and a supervisor gave him an orientation. (*Id.* ¶ 8.) During this orientation, Corn Products told Spencer its expectations in terms of his behavior and attendance. (*Id.*) Its attendance policy in particular had been ratified by Spencer's union. (*Id.*)

### B. Duties

As a mechanical operator, Spencer was responsible for monitoring the sugar-making process by taking readings and keeping the products that had readings within certain

specifications for sweetness. (R. 10-3, Def.'s Statement of Material Facts ¶¶ 4, 9.) If he found that the products were reading outside of the specifications, Spencer was expected to make adjustments to the manufacturing process to bring the product in line with the specifications. (*Id.* ¶ 9.)

In October 1996, Spencer transferred to a position as a customer service agent. (R. 10-3, Def.'s Statement of Material Facts ¶ 10.) In this role, Spencer was to answer telephones, take orders, and prepare those orders for processing. (*Id.*) A year or two later, Spencer moved back into a unionized position in Corn Products' plant. (R. 10-3, Def.'s Statement of Material Facts ¶ 11.) Instead of working in the refinery as he did before, Spencer moved to the dextrose unit. (*Id.*)

During his employment with Corn Products, Spencer served as a union steward. (R. 24-1, Pl.'s Statement of Uncontested Facts ¶ 7.) As a union steward, Spencer brought employment issues to the attention of management and attempted to work with management to resolve these issues. (*Id.*)

### C. Attendance Problems

During his employment with Corn Products, Spencer violated its attendance policy on several occasions and suffered disciplinary action. (R. 10-3, Def.'s Statement of Material Facts ¶ 13.) Corn Products issued disciplinary notices to Spencer for these violations on: (1) May 2, 1991 for three absences in four months; (2) May 9, 1991 for four absences in five months; (3) September 11, 1992 for five absences in twelve months; (4) October 5, 1992 for eight absences in twelve months; (5) April 19, 1999 for six absences in eighteen months; (6) October 29, 1999 for eight absences within eighteen months; and (7) June 16, 2000 for three absences over an

3

undisclosed period of time. (*Id.*) On each of these occasions, Corn Products either suspended Spencer or issued a written warning. (*Id.* ¶ 14.) Each of these disciplinary notices stated that future incidents would result in increased discipline, up to and including suspension preliminary to discharge. (*Id.*) After being disciplined on April 19, 1999, Spencer filed a union grievance related to the company's attendance policy. (R. 10-3, Def.'s Statement of Material Facts ¶ 15.) That grievance was denied. (*Id.*)

### D. Unsatisfactory Work Performance

Corn Products disciplined Spencer for unsatisfactory work performance on several occasions. (R. 10-3, Def.'s Statement of Material Facts ¶ 17.) Corn Products issued disciplinary notices to Spencer for these violations on: (1) April 3, 1992 for shipment of an order that did not comply with the specifications and for failing to send a certificate of analysis to the customer; (2) October 5, 1992 for failing to follow written instructions; (3) April 3, 1994 for failure to adjust process to correct manufacture of product that was outside of the specification; (4) September 16, 1999 for failure to check for open water valves that caused certain belts being burned off; and (5) October 8, 1999 for poor quality of analysis and duplication of product. (*Id.*) Spencer himself reported his mistake with respect to the September 16, 1999 incident. (*Id.* ¶ 18.) Each of Corn Products' disciplinary notices explained to Spencer that his actions demonstrated poor performance and that further infractions would lead to further disciplinary action. (*Id.*)

### E. Violation of Work Rules

Corn Products also disciplined Spencer for violating its work rules. (R. 10-3, Def.'s Statement of Material Facts ¶ 19.) Corn Products issued disciplinary notices to Spencer for these violations on: (1) May 22, 1997 for leaving his work post to exchange cassette tapes in the

4

parking lot; (2) June 23, 2000 for failing to fill out, despite repeated warnings and discipline, a necessary daily log sheet and for continuing a pattern of failing to properly complete required documentation that jeopardized certification; and (3) June 23, 2000 for recording time that he did not actually work on his time records. (*Id.* ¶ 20.)

### F. Oral Reprimands

In addition to this formal discipline, Spencer also received oral reprimands on multiple occasions. (*Id.* ¶ 21.) Specifically, Corn Products counseled Spencer on: (1) November 16, 1999 for failing to put his name on certain sheets relating to performance of his operator duties; (2) March 8, 2000 for making numerous errors in filling out forms on particular lot numbers; and (3) April 13, 2000 for carelessness in improperly logging certain lot numbers. (*Id.* ¶ 21.)

### G. Unrecorded Daily Log Sheet

Spencer failed to fill out an essential portion of the pre-crystallization daily log sheet on June 16, 2000. (R. 10-3, Def.'s Statement of Material Facts ¶ 23.)

### H. Falsification of Time

On June 19, 2000, Spencer was scheduled to begin working at 7:00 a.m. (R. 10-3, Def.'s Statement of Material Facts ¶ 24.) He arrived at 8:31 a.m., which caused a worker on the previous shift to stay on the job for an extra hour-and-a-half. (*Id.*) Corn Products had to pay that worker at the overtime rate for the time he filled in for Spencer. (*Id.*) Spencer reported that he began work on time. (*Id.*)

On June 20, 2000, Spencer's supervisor spoke to him about misreporting time. (R. 10-3, Def.'s Statement of Material Facts ¶ 25.) Despite this warning, on the very same day Spencer credited himself for 45 minutes of time that he did not work. (*Id.*)

5

### I. Infractions Meeting

Spencer met with his supervisor on June 23, 2000 to discuss recent infractions. (R. 10-3, Def.'s Statement of Material Facts ¶ 27.) At that meeting, the supervisor gave Spencer two disciplinary notices – one for the falsification of his time records and the other for his failure to fill out the pre-crystallization daily log sheet.

Spencer's supervisor informed him that a random audit had been conducted of Spencer's time records. (R. 10-3, Def.'s Statement of Material Facts ¶ 29.) His supervisor told him that the audit had revealed a pattern of fraud by Spencer. (*Id.*) Spencer asked if his pay could be docked for the portion of time that he had recorded but had not worked. (*Id.* ¶ 31.) Corn Products instead decided to issue Spencer a five-day suspension pending the advisability of discharge. (*Id.* ¶ 32.)

Spencer spoke to a union representative to request a predischarge decision meeting. (*Id.* ¶ 33.) The union and Corn Products granted that request. (*Id.*) The predischarge meeting occurred on June 29, 2000, with Corn Products presenting Spencer's infractions and Spencer asking for leniency and admitting fault. (*Id.* ¶ 34.) After the meeting, Corn Products decided to terminate Spencer because of his poor work performance and for his falsification of time sheets. (*Id.* ¶ 35.) Corn Products sent Spencer a notice of termination on July 10, 2000. (R. 24-1, Pl.'s Statement of Undisputed Facts ¶ 27.) The notice cited Spencer's infractions on June 16 and June 20, 2000 as the reason for his termination. (*Id.*)

### IV. Other Corn Products Employees

#### A. Richard Omiencinski

Richard Omiencinski, a non-union refinery worker, once recorded eight hours on his time

6

sheet when he truly only worked six hours. (R. 10-3, Def.'s Statement of Material Facts ¶ 37; R. 24-1, Pl.'s Statement of Undisputed Facts ¶ 24.) Corn Products only issued Omiencinski a disciplinary suspension.

### B. Stephen Wright

Stephen Wright, an African-American, was a Corn Products employee. (R. 10-3, Def.'s Statement of Material Facts ¶ 39.) At some point, Wright left a water valve open for six to seven hours. (*Id.*) Although management met with Wright about the incident, he received no written warning or discipline for this incident. (*Id.*) Based on other performance issues, Corn Products suspended Wright and ultimately terminated his employment. (*Id.*)

## STANDARD

Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court must view all evidence and draw all reasonable inferences in the light most favorable to Plaintiff, as the non-moving party. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

## ANALYSIS

Spencer filed a three count Complaint against Corn Products on November 1, 2001. In Counts I and II, Spencer claims that Corn Products terminated him on the basis of race in violation of 42 U.S.C. § 1981 and Title VII. In Count III, Spencer claims that Corn Products retaliated against him on the basis of his action as a union steward.

Corn Products has moved for summary judgment on all counts. First, Corn Products claims that it is entitled to judgment as a matter of law with respect to both of the racial discrimination claims because: (a) Spencer cannot establish a *prima facie* case of discrimination and (b) some of Spencer's claims are beyond the scope of his E.E.O.C. charge.[2] Second, Corn

---

[2] Corn Products also claims that Spencer cannot maintain a claim under § 1981 because that statute requires there to be a contractual relationship between the parties. Defendant claims that no contractual relationship existed because Spencer was an at-will employee. Spencer does not contest whether an at-will employment relationship is a contract for purposes of § 1981. Every appellate court that has confronted the issue, however, has found that an at-will employee can bring suit under § 1981. *See Skinner v. Maritz, Inc.*, 253 F.3d 337, 340-41 (8th Cir. 2001); *Lauture v. International Bus. Machs. Corp.*, 216 F.3d 258, 261-62 (2d Cir. 2000); *Perry v. Woodward*, 199 F.3d 1126, 1133-34 (10th Cir. 1999); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1051-52 (5th Cir. 1998). The Seventh Circuit has not yet found the need to address the issue. *See Staples v. Pepsi-Cola Gen. Bottlers, Inc.*, 312 F.3d 294, 298 n. 3 (7th Cir. 2002). Spencer instead counters that an employment contract existed through a collective bargaining agreement between his union and Corn Products. The Court declines to address this issue because Spencer's racial discrimination claim cannot otherwise withstand summary judgment. *See Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998).

8

Products argues that it is entitled to judgment as a matter of law with respect to Spencer's retaliation claim because there is no evidence that he engaged in protected activity under Title VII. Third, Corn Products argues that Spencer's retaliation claim is preempted under the National Labor Relations Act.

I. **Corn Products Is Entitled To Judgment As A Matter Of Law With Respect To Spencer's Racial Discrimination Claims**

   A. **Spencer's Complaint is not Beyond the Scope of His E.E.O.C. Charge**

As a general rule, a plaintiff suing under Title VII cannot bring claims in a lawsuit that were not included in his E.E.O.C. charge. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Id.* Here, Spencer complained to the E.E.O.C. that "non-African American employees were not disciplined or terminated even though they also incorrectly filled out their time sheets." (R. 1-1, Compl. Ex. B.) Defendant contends that Spencer's action is beyond the scope of his E.E.O.C. charge to the extent that it seeks redress for Corn Products' discipline of Spencer for improperly leaving a water valve open.

Since most E.E.O.C. charges are filled out by laypersons, rather than by attorneys, a Title VII plaintiff need not allege in the E.E.O.C. filing "each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The test for determining whether a plaintiff's claims are within the scope of his EEOC charge is (1) whether "there is a reasonable relationship between the allegations in the charge and the claims in the complaint" and (2) whether "the claim in the complaint can

reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. Spencer argues that "[a]n EEOC investigator would have likely interviewed Spencer, which would have revealed other examples of how Spencer felt he was being discriminated against." (R. 22-1, Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 6.) This argument misconstrues the purposes of the E.E.O.C. filing requirement. The rule is intended to afford the E.E.O.C. and the employer an opportunity to settle the dispute through conference, conciliation and persuasion. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). Additionally, it provides the employer with some warning of the conduct about which the employee is aggrieved. *Rush*, 966 F.2d at 1110. It also frames the issues for the E.E.O.C. so an investigator can conduct an efficient inquiry. A finding that a plaintiff has exhausted his administrative remedies where he simply claims that he would have provided more examples of discrimination during an interview would eviscerate the rule.

Looking instead at the E.E.O.C. charge from the perspective of Corn Products and the E.E.O.C., there is a reasonable relationship between the charge and the Complaint's allegations concerning the open water valve. Defendant admits that Spencer was fired not just for the one incident related to his time sheet, but because the incident was the culmination of a long line of workplace violations. Therefore, a reasonable inquiry into Spencer's termination would have turned up past violations, including the citation for leaving the water valve open.

That being said, the allegations related to the open water valve have extremely limited relevance here. Spencer alleges in his Complaint that he was terminated based on discrimination and retaliation. He does not state a cause of action based on Corn Products' discipline of him for leaving the water valve open.

10

## B. Spencer Cannot Establish a *Prima Facie* Case of Discrimination

Spencer concedes that there is no direct evidence that Corn Products racially discriminated against him. Therefore, Plaintiff can only prove discrimination indirectly via the *McDonnell Douglas* method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that *prima facie* test, Spencer must show that he: (1) belongs to a protected class, (2) performed his job according to his employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected class. *See Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 744 (7th Cir. 2002). If Plaintiff establishes a *prima facie* case of discrimination, the burden of production then shifts to his employer to articulate some legitimate, nondiscriminatory reason for its employment decision. *Id.* Once the employer submits this proffered reason, the burden then shifts back to Plaintiff to show that his employer's stated reason is merely a pretext for discrimination. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993). This analysis applies for both Title VII and Section 1981 claims. *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 637 n.1 (7th Cir. 2001).

The parties agree that Spencer belongs to a protected class and was terminated. Therefore, the only issue for this Court is whether there are genuine disputes of material fact as to whether Spencer sufficiently performed his job and was treated less favorably than non-African American similarly situated employees.

### 1. The undisputed facts show that Spencer did not perform his job according to Corn Products' legitimate expectations

Unless a plaintiff can establish that he was meeting his employer's bona fide

expectations, he is not entitled to present his case to the jury. *Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001). As long as the employer's expectations are in good faith, the Court's role is only to determine if the employee met them. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000). In other words, it is not the Court's job to establish the employer's reasonable expectations.

The undisputed facts show that Spencer did not meet Corn Products' legitimate expectations. Spencer received citations for numerous shortcomings. For example, Corn Products issued seven disciplinary notices to Spencer for violations of its attendance code. Three of these notices came in Spencer's last fourteen months of employment. Corn Products also disciplined Spencer five times for work that was unsatisfactory. Two of these incidents occurred in Spencer's last nine months of employment. Additionally, Corn Products sent Spencer two notices for violations of its work rules. The last one, dated June 23, 2000, cited two distinct violations and was issued on Spencer's last day working for Corn Products. Further, Spencer received three oral reprimands in his last seven months of employment for errors in filling out documentation. Finally, in his last week of work, Spencer failed to fill out an essential portion of a daily log sheet and twice misreported the time he worked. Corn Products cited his misrepresentation of time as the last straw in terminating Spencer's employment. These facts together show that Spencer did not meet Corn Products' legitimate expectations. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328 (7th Cir. 2002) (nine critical written evaluations plus several written warnings showed that plaintiff did not meet her employer's legitimate expectations).

Although Spencer admits these facts, he somehow claims that he was meeting Corn

Products' legitimate expectations. First, he attacks the policies and enforcement of them. Related to attendance, Spencer claims that his absences should be disregarded because Corn Products' policy was to count sick days as unexcused absences. This argument has no merit, however, because there is no evidence that Corn Products' attendance policy is arbitrarily enforced or discriminatory. *See Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999).

Next, Spencer claims that the violations were "unwarranted." The undisputed facts, however, do not support this statement. Spencer did not contest Corn Products' statements surrounding the disciplinary notices. He did not submit facts in the record to show that he was meeting Corn Products' bonafide expectations. Spencer, therefore, has not shown that a genuine issue of material fact exists as to whether he met his employer's legitimate expectations.

### 2. Spencer has not produced evidence that Corn Products treated him differently than similarly situated employees outside his racial class

To satisfy the fourth prong of the *McDonnell Douglas* test, Spencer must show that Corn Products treated him less favorably than similarly situated employees that are not African American. The Seventh Circuit has explained the analysis of whether a plaintiff has met this burden:

> This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Spencer only points to Richard Omiencinski, a Caucasian employee, as someone who was

13

similarly situated and received more favorable treatment. Spencer does not explain how Omiencinski is similarly situated other than the fact that he was not terminated for falsifying time. Indeed, the undisputed facts show that Omiencinski was not a similarly situated employee. Most telling on this point is that Omiencinski was a non-union employee while Spencer was unionized. As such, Omiencinski and Spencer were subject to different work rules. Spencer's work rules were defined through a collective bargaining agreement. Omiencinski's employment was not governed by that agreement. Also, Omiencinski worked in Corn Products' refinery, while Spencer was assigned to Corn Products' dextrose department. Spencer has not shown a genuine issue of material facts exists as to whether he and Omiencinski were similarly situated.

Further, Spencer has not shown that Corn Products treated Omiencinski more favorably. Spencer has not introduced any evidence showing how many other times Omiencinski had broken workplace rules or whether Corn Products was aware of those violations. Spencer, meanwhile, had a history of documented performance and attendance problems. Summary judgment is the "put up or shut up" moment in a lawsuit, when Spencer has to show what evidence he has that would convince a trier of fact to accept his version of events. *Schacht v. Wisconsin Dept. of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). Having failed to meet his burden in two prongs of the *prima facie* test, Spencer cannot survive summary judgment.

## II. Corn Products Is Entitled To Judgment As A Matter Of Law With Respect To Spencer's Retaliation Claim

Spencer claims that Corn Products terminated him in retaliation for his activity as a union steward. As with discrimination, retaliation can be shown either directly or indirectly. Having no evidence of direct retaliation, Spencer attempts to make his case through the indirect method.

14

The Seventh Circuit has adapted the *McDonnell Douglas* prongs to the retaliation context. *Stone v. City of Indianapolis Public Utils. Div.*, 281 F.3d 640, 644 (7th Cir.), *cert. denied*, __ U.S. __, 123 S.Ct. 79, 154 L.Ed.2d 134 (2002). At the first stage, Spencer must show that: (1) he engaged in statutorily protected activity; (2) he performed his job according to Corn Products' legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* at 644; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir.), *cert. denied*, __ U.S. __, 123 S.Ct. 97, 154 L.Ed.2d 27 (2002).

Once again, Plaintiff cannot make a *prima facie* showing of discrimination. First, Spencer cannot meet the first prong. Serving as a union steward is not protected activity under Title VII. *See Washington v. American Stores Co., Inc.*, No. 98 C. 1439, 1999 WL 966092, at *6 (N.D. Ill. Oct. 14, 1999), *aff'd*, 234 F.3d 1275 (7th Cir. 2000). Second, as the Court addressed above, Spencer cannot show that he performed his job according to Corn Products' legitimate expectations. Third, although Spencer points to Steven Wright, he has not created a genuine issue of material fact as to whether Corn Products treated him less favorably than similarly situated employees who did not engage in statutorily protected activity. Spencer complains that Wright left the water valve open but did not receive a citation. Spencer, however, was not terminated for leaving a water valve open. Instead, Corn Products fired Spencer after he falsified his time record in the context of his other failures. Further, Corn Products ultimately terminated Wright for other violations.

Because Spencer cannot establish a *prima facie* case of retaliation, Corn Products is entitled to judgment as a matter of law. The Court therefore declines to address whether

Spencer's retaliation claim is preempted under the National Labor Relations Act.

## CONCLUSION

Spencer has failed to introduce evidence of a *prima facie* case of racial discrimination or retaliation. There is no genuine issue of material fact and Corn Products is entitled to judgment as a matter of law. Accordingly, Corn Products' motion for summary judgment is granted.

Dated: April 4, 2003          ENTERED

_____
AMY J. ST. EVE
United States District Court Judge